# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3614 | **DATE** | March 15, 2004 |
| **CASE TITLE** | International Strategic Marketing v. Zenith International SA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons explained in the memorandum opinion of this date, summary judgment is entered [36-1] in favor of the defendant Zenith International S.A. and against the plaintiff International Strategic Marketing Inc. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| X | Notices MAILED by judge's staff. | | MAR 17 2004 | | |
| | Notified counsel by telephone. | | date docketed | | 48 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to _____ | | date mailed notice | | |
| KAM | courtroom deputy's initials | | KAM mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | (Reserved for use by the Court) | | |

01-3614.001                                                      March 15, 2004

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

INTERNATIONAL STRATEGIC MARKETING, )
INC., an Illinois corporation,     )
                                   )
            Plaintiff,             )
                                   )
       v.                          )   No. 01 C 3614
                                   )
ZENITH INTERNATIONAL, S.A.,        )
a foreign corporation,             )
                                   )                    DOCKETED
            Defendant.             )
                                                       MAR 1 7 2004

## MEMORANDUM OPINION

The court has under advisement the motion of the defendant for summary judgment on this single-count complaint. The motion will be granted.

### Background

The plaintiff, International Strategic Marketing, Inc. ("ISMI"), is an Illinois corporation with its principal place of business in Cook County, Illinois. Plaintiff is in the business of marketing and distributing luxury Swiss watches throughout the United States.

The defendant, Zenith International, S.A. ("ZISA") is a foreign corporation headquartered in Le Locle, Switzerland. Defendant is in the business of manufacturing luxury watches. ZISA sold its watches in the United States prior to 1983, but it ceased

48

its sales activity at that time because of the objection of Zenith Electronics Corporation ("ZEC"), which asserted ownership of the Zenith brand name.

ZISA approached ZEC in 1996 about a possible license agreement for use of the Zenith name in the United States and Canada. However, no agreement was reached.

In 1999, ISMI, through an intermediary, approached ZISA about the possibility of attempting to negotiate an agreement with ZEC which would allow ZISA to sell its watches in the United States and Canada under the Zenith name, with ISMI acting as the distributor of the watches. A telephone conversation was held in September 1999 between Maurice Avenaim, one of the owners of ISMI, and François Manfredini, the President of ZISA, to discuss the subject. Following this telephone conversation, Avenaim prepared a letter for Manfredini's signature concerning their conversation. Thereafter, contact was made with ZEC by ISMI, with participation by ZISA, and eventually an agreement was reached between ZISA and ZEC allowing ZISA to sell its watches under the Zenith brand name in the United States and Canada. By that time, however, ZISA had been acquired by still another corporation, LVMH Möet Hennessy Louis Vuitton, Inc. ("LVMH"). LVMH had its own distribution system and began distributing ZISA watches through that system. ISMI was not hired as a distributor.

## The Complaint

The law of Illinois applies to this diversity case, and the complaint purports to state a claim based on the doctrine of equitable estoppel. The complaint refers to the telephone conversation between Avenaim of ISMI and Manfredini of ZISA and attaches the letter signed by Manfredini. The letter includes the statement that "Zenith SA agrees to grant you permission to initiate negotiations for finding a solution to the current situation" (with ZEC) and states that "[b]ased on your extensive marketing experience in North America as well as your experience as a luxury Swiss watch distributor, we feel that you are a likely candidate for this distribution [of ZISA watches in North America]." The letter further states that ZISA extends ISMI its "complete support in the task at hand ...."

The complaint goes on to allege that, in reliance on these representations, ISMI spent considerable time and effort in attempting to obtain a license agreement with ZEC, believing that if such an agreement were obtained, ISMI would be named the distributor. However, the complaint continues, during the time ISMI was acting on ZISA's behalf, ZISA knew that ISMI would not be given distribution rights because it knew that it was going to be acquired by LVMH, which had its own distribution capacity. The complaint alleges that ZISA encouraged ISMI to spend time and effort cultivating ZEC, although it knew those efforts would not

result in a distributorship for ISMI. The complaint concludes by alleging that because ZISA misled ISMI into a fruitless expenditure of time and effort, ISMI should be granted a judgment of approximately $75 million, which would have been the amount it would have earned as a ZISA distributor for a period of three years.

## The Summary Judgment Motion

ZISA moves for summary judgment on two grounds. First, it argues that under the law of Illinois, the doctrine of equitable estoppel cannot be the basis of a claim but can only be used as a means of preventing the assertion of a defense by the opposing party. The other ground is that, even if the doctrine could support a cause of action, ISMI has not established the elements of equitable estoppel in this case.

## Whether the Doctrine Applies

The cases are divided on whether Illinois allows equitable estoppel to be used as a "sword" or only as a "shield." As sometimes happens, there are probably more federal cases than Illinois cases on the point. For cases holding that there is no cause of action based on equitable estoppel, see Nibeel v. McDonald's Corp., No. 97 C 7203, 1998 WL 547286, at *12 (N.D. Ill. Aug. 27, 1998) (Kocoras, J.), and our own opinion in Center Ice of DuPage, Inc. v. Burley's Rink Supply Inc., No. 96 C 5537, 1997 WL 534256, at *4 (N.D. Ill. Aug. 20, 1997), where we refer to the

- 5 -

doctrine as "not really a 'claim' at all, but rather a defense to a defense." For the opposite view, see <u>Time Warner Sports Merchan. v. Chicagoland Processing Corp.</u>, 974 F. Supp. 1163, 1172-74 (N.D. Ill. 1997) (Shadur, J.). We have enough doubt about the matter that we decline to grant defendant summary judgment on this ground. It is unnecessary to decide whether Illinois law permits an independent cause of action based on equitable estoppel because we agree with defendant that, whether it does or not, the necessary elements of equitable estoppel are not present in this case.

## The Elements of Equitable Estoppel

It will not be necessary to list all of the necessary elements of equitable estoppel, since this case turns on the absence of the very first element: "[w]ords or conduct by the party against whom the estoppel is alleged, amounting to a misrepresentation or concealment of material facts." <u>Lowenberg v. Booth</u>, 162 N.E. 191, 195 (Ill. 1928). The "material facts" must be existing facts, not promises of future action.

> We cannot find a misrepresentation or concealment of material facts by the defendant. Promises as to future action are not misrepresentations of existing facts. Action taken in reliance on such promises, as distinguished from action taken in reliance on a misrepresentation of existing facts, cannot raise an estoppel.

Ozier v. Haines, 99 N.E.2d 395, 396 (Ill. App. Ct. 1951), aff'd., 103 N.E.2d 485 (1952).[1]

An analysis of the alleged misrepresentations that ISMI relies on occurred during the initial telephone conversation and as a part of the follow-up letter. ZISA argues that these statements were not material misrepresentations but were, at most, representations as to future action. ISMI does not attempt to explain how the statements in question were misrepresentations of material fact, and seems to believe that it would be sufficient to prove that ZISA made promises of future action knowing that they would not be fulfilled.

Our analysis of the statements is that they are not representations as to existing fact and, further, that there is no evidence that they were false or misleading. Still less is there any evidence that ZISA knew they were false or misleading or intended them to be so.

We will begin with the telephone conversation. In its Memorandum in Opposition to the Motion for Summary Judgment, ISMI states:

> It is undisputed that in their initial telephone conversation, Avenaim told Manfredini that he wanted the distributorship-Manfredini himself testified that Avenaim told him he would approach ZEC "in order to obtain the

---

[1] The Supreme Court opinion does not specifically state that a material fact must be an existing fact, but it does refer to the Appellate Court holding: "The Appellate Court denied relief to plaintiffs in this cause because of the nonexistence of the first element, namely, words or conduct amounting to the misrepresentation or concealment of existing facts." 103 N.E.2d at 487.

distribution of Zenith watches in the United States."
SMF ¶47 Avenaim testified that Manfredini told him if he accomplished this, <u>he would be chosen for the distribution</u>. SMF ¶55.

(Memorandum in Opposition to the Motion for Summary Judgment, at 9) (emphasis added). ISMI has taken considerable liberty with the actual testimony of Avenaim. Referring to the record reference SMF ¶55, we find the following: "[A]ccording to Avenaim, when he told Manfredini that he wanted the North American distributorship if he were successful in his negotiations with ZEC, Manfredini replied, 'I don't see why not.' Avenaim Dep. p. 68-69, 71." Looking at the actual deposition of Avenaim, we see still less resemblance between his actual testimony and what ISMI's memorandum contends his testimony was:

> Q. And did Mr. Manfredini tell you that you would be the distributor?
>
> A. Yes.
>
> Q. What did he say to suggest that you would be the distributor?
>
> A. He said, I don't see why not. Let's give it a try. Something to that extent.
>
> Q. Are those his words? "I don't see why not." "Let's give it a try."
>
> A. Something to that extent. Not exactly in those words.
>
> Q. And when he said, I don't see why not. Let's give it a try. Did you understand him to mean that that meant that you would be the distributor —
>
> A. Absolutely.

 Q. &ndash; or just that he meant that you should initiate some efforts with Zenith Electronics?

 A. I think what he meant is, if you can do what you promise you can do, he'll give me the distribution.

    * * * * *

 A. What did I say?

 Q. Yes.

 A. I said, I would like to be your North American distributor for Zenith brand.

 Q. What did he say?

 A. He said, I don't see why not.

(Avenaim Dep. at 68-69, 71.)

If Avenaim actually had said ISMI "would be chosen for the distribution," that could have amounted to a promise. But we do not see how "I don't see why not" was a promise, nor does ISMI make a serious attempt to argue that it was. Instead, the argument seems to be that it was a statement upon which ZISA had a right to rely, even though it was not a promise. Clearly, though, it was not a representation as to an existing fact.

Turning now to the letter, Avenaim drafted it for Manfredini's signature. Manfredini signed and sent it back with some revisions. It contained the following statement (admittedly authored by Avenaim himself): "[B]ased on your extensive marketing experience in North America as well as your experience as a luxury Swiss watch

distributor, we feel that you are a likely candidate for this distribution."

If when Manfredini signed and returned the letter he did not believe ISMI was a "likely candidate" for the distribution, that would have been a misrepresentation of his then-existing state of mind, and therefore a misrepresentation of an existing fact. Because ISMI was about to embark upon a substantial marketing effort in the hope of winning a distributorship, we think such a misrepresentation by Manfredini would have been material. The question is whether ISMI has offered evidence that Manfredini did not in fact regard ISMI as a "likely candidate."[2] ISMI argues that Manfredini already knew ZISA was going to be acquired by LVMH, which necessarily excluded ISMI as a possible distributor. But there is no evidence to support that conclusion. The telephone conversation and the letter were in June of 1999. LVMH did not submit a letter of intent to ZISA until the end of September, and the acquisition closed on November 10, 1999. There is no evidence from which the fact finder could conclude that ZISA misrepresented or concealed anything in regard to the acquisition. Basically, the gravamen of the complaint, that ZISA knew of an impending acquisition and kept silent about it in order to benefit from ISMI's efforts with ZEC, is without evidence to support it.

---

[2] We put to one side any question as to the meaning of the phrase.

ISMI argues that ZISA failed to cooperate with ISMI in the presentations to ZEC. For its part, ZISA explains any lack of enthusiasm as due to a disappointing performance by ISMI. Whatever the explanation may be for the alienation that occurred between the parties, it would not provide a factual basis for concluding that Manfredini had misrepresented his view of ISMI's prospects back in September of 1999.

## Conclusion

We conclude that there is no genuine issue as to whether defendant misrepresented or concealed a material fact or as to whether plaintiff reasonably relied upon such a misrepresentation or concealment to its detriment. Accordingly, summary judgment will be entered for the defendant.

DATED: March 15, 2004

ENTER: _____
John F. Grady, United States District Judge